IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANDREA GOOD,

      Plaintiff,

v.                                                     No. CIV 08-59 LFG/LAM

HAKODATE CITY HALL,
*et al.*,

      Defendants.

**MEMORANDUM OPINION AND ORDER**
**GRANTING DEFENDANT HAKODATE CITY HALL'S MOTION TO DISMISS**

THIS MATTER is before the Court on Hakodate City Hall's ("City Hall's") Motion to Dismiss, filed January 28, 2008. [Doc. 9.] On February 11, 2008, Plaintiff *pro se*, Andrea Good ("Good"), filed a single response [Doc. 21] in opposition to City's Hall's Motion to Dismiss and two other motions to dismiss.[1] On February 25, 2008, City Hall filed a reply. [Doc. 31.] After careful consideration of the pertinent law and pleadings, the Court will grant City Hall's motion to dismiss.

**Background**

Good and her husband were involved in an automobile accident near Sapporo, Japan. Her attempts to resolve damage claims with the allegedly culpable driver's insurance company, Fuji Fire and Marine, proved to be disappointing for Good and her spouse. Litigation ensued in Japan with equally disappointing results for Good.

---

[1] Administrative Order No. Misc. 92-88 (May 4, 1992) requires that practitioners file separate pleadings for each matter upon which adjudication or a ruling of the Court is sought. Thus, Good should have filed separate opposition briefs in response to each motion to dismiss, rather than combining three responses into one pleading. Notwithstanding this failure, the Court considers the arguments presented in Good's combined response.

Good's present lawsuit ("second federal lawsuit") is related to an earlier action she brought in the U.S. District Court ("first federal lawsuit"). In the first federal lawsuit, Good sued the allegedly culpable driver, his insurance company and its attorneys, and various Japanese governmental agencies, including the Ministries of Transportation, Justice and Finance, and the Association of Assessing Insured Automobile Injuries. [No. CIV 06-962 BB/ACT]. As would be expected, Defendants filed motions to dismiss challenging the court's jurisdiction. After holding a hearing on July 7, 2007, the Honorable Bruce Black rejected Good's arguments and granted Defendants' motions to dismiss, either for lack of subject matter jurisdiction or lack of personal jurisdiction over the Japanese defendants. [Doc. 64, No. CIV 06-962.] Good's appeal of the dismissal of her case is pending before the Tenth Circuit Court of Appeals.

On November 14, 2007, Good filed what became the second federal lawsuit. This Complaint alleged violations of Good's civil rights and the U.S. District Court's privacy policy and named a number of Japanese individuals and entities, along with Albuquerque attorneys, who had represented some of the defendants in the first federal lawsuit. [Doc. 1, Ex. 1.] The second federal lawsuit was filed in the First Judicial District Court in Santa Fe, New Mexico and then removed by Defendant City Hall. [Doc. 1.]

Good alleged that these Defendants gained access to her private documents from Japanese governmental entities and posted the documents "unredacted on the court's Pacer [system] on December 1, 2006" [in relation to the first federal lawsuit]. [Doc. 1, Ex. 1.] Good argued that Defendants, in the first federal lawsuit, supported their motions to dismiss by retrieving Good's alien registration and family register from Hakodate City Hall and another Japanese city hall. Good asserted that while City Hall's order form clearly stated that the contents of the documents were not

2

to be revealed to the public, the documents were attached to a reply brief, and thus, appeared on the Court's electronic docketing system in the first federal lawsuit, which made them accessible to the public by internet. [*See also* Doc. 1, Ex. 2, First Amended Complaint.]

Good seeks monetary damages, including an award of compensatory damages in the amount of $500,000, and exemplary or punitive damages in an amount not less than 2 million dollars. [Doc. 1, Ex. 2, First Amended Complaint, ¶¶ 58, 59.]

After City Hall's removal of Good's complaint to federal court, the parties consented to have the undersigned magistrate judge preside over the second federal lawsuit. [Doc. Nos. 12-14.] Similar to what occurred in the first federal lawsuit, many of the Defendants in this case have filed motions to dismiss concerning the Court's jurisdiction.

## Hakodate City Hall's Motion to Dismiss

City Hall argues that the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602, *et seq.* dictates that City Hall, as a political subdivision of a "foreign state," is immune from the jurisdiction of the courts of the United States. Because the United States federal courts do not have subject matter jurisdiction over a foreign state, City Hall asks that it be dismissed.

## Legal Standard

Fed. R. Civ. P. 12(b)(1) authorizes a court to dismiss a complaint for "lack of jurisdiction over the subject matter." Federal courts, as courts of limited jurisdiction, may only adjudicate cases that the Constitution and Congress have granted them authority to hear. Mires v. United States, 466 F.3d 1208, 1211 (10th Cir. 2006). Statutes conferring jurisdiction are to be strictly construed, and doubts are resolved against federal jurisdiction. F & S Constr. Co. v. Jensen, 337 F.2d 160, 161 (10th Cir. 1964).

The FSIA is the "sole basis for obtaining jurisdiction over a foreign state [or its agency or instrumentality][2] in our courts." Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 434 (1989). Foreign states and their agencies are presumptively immune from suit in the United States courts. Once a foreign state makes a *prima facie* showing of immunity, the plaintiff bears the burden of production to make an initial showing that a specified exception to FSIA immunity applies. Orient Mineral Co. v. Bank of China, 506 F.3d 980, 991-92 (10th Cir. 2007), *pet. for cert. filed*, Feb. 21, 2008. *See* 28 U.S.C. § 1604 (foreign state shall be immune from jurisdiction except as provided in Sections 1605 and 1607, i.e., general exceptions to jurisdictional immunity of a foreign state and counterclaims). Defendant then bears the ultimate burden of persuasion to show that the exception does not apply. Id. at 992.

The pertinent exceptions to sovereign immunity under the FSIA are: (1) express or implied waiver of immunity; . . [and]. (5) money damages are sought against a foreign state for personal injury or death, or damage to or loss of property occurring in the United States; . . . ." 28 U.S.C. § 1605(a)(1)-(7). If a claim does not fall within one of the exceptions, the court cannot entertain the action and must dismiss it against the foreign state for lack of subject matter jurisdiction. Security Pacific Nat. Bank v. Derderian, 872 F.2d 281, 285 (9th Cir. 1989).

In addition, a foreign state loses its immunity under the FSIA if the foreign state brings an action or intervenes in a court of the United States with respect to any counterclaim:

---

[2] A "foreign state" under the FSIA includes "a political subdivision of a foreign state or an agency or instrumentality of a foreign state." 28 U.S.C. § 1603(a). An "agency or instrumentality of a foreign state" means any entity that is "a separate legal person, corporate or otherwise," "an organ of a foreign state or political subdivision thereof," and "is neither a citizen of a State of the United States." 28 U.S.C. § 1603(b).

> (a) for which a foreign state would not be entitled to immunity under section 1605 of this chapter had such claim been brought in a separate action against the foreign state; or
> (b) arising out of the transaction or occurrence that is the subject matter of the claim of the foreign state; or
> (c) to the extent that the counterclaim does not seek relief exceeding in amount or differing in kind from that sought by the foreign state.

28 U.S.C. § 1607.

Under the FSIA, federal courts must inquire at the "threshold of every action" against a foreign state whether the exception to sovereign immunity that the plaintiff alleges permits the exercise of federal jurisdiction. Verlinden B.V. v. Cent. Bank of Nigeria, 461 U.S. 480, 493-94 (1983).

## Analysis

### A.     Violation of Local Rule

Good argues that Hall's Motion to Dismiss should be denied for a number of reasons. First, Good contends that the motion should be summarily denied because of City Hall's failure to follow the local rules requiring that the movant request concurrence of a *pro se* party at least three working days before filing a motion. D.N.M. LR-Civ 7.4(a). The movant must recite in the motion whether concurrence was refused or explain why concurrence could not be obtained. "A motion that omits recitation of a good-faith request may be summarily denied." D.N.M. LR-Civ 7.4(a). Defendant did not comply with the local rule. However, it is clear that Good would oppose the motion to dismiss. Therefore, the Court, in the exercise of its discretion, declines to deny the motion on that basis.

### B.     Removal of Lawsuit

Good also argues that because City Hall removed this case to federal court, it "waived its immunity either explicitly or by implication." *See* 28 U.S.C. 1605(a)(1). According to Good, "City

5

Hall's removal of this case would certainly imply that it is prepared to be present in the forum." [Doc. 21. p. 2.] In support of the waiver argument, Good also asserts that City Hall's "removal and disposal of Plaintiff's request for a jury [is] the intervention of a foreign state," and acts as a counterclaim. *See* 28 U.S.C. § 1607 (regarding counterclaims).

The Court rejects Plaintiff's position that the act of removing a case from state court to federal court, based on federal question jurisdiction, automatically waives immunity under the FSIA. The Tenth Circuit Court of Appeals has not addressed the question of whether the act of removing a case to federal court acts as an implied waiver of a sovereign's immunity under FSIA. However, at least two circuit courts have held that removal cannot constitute waiver under those circumstances. In Rodriguez v. Transnave, Inc., 8 F.3d 284, 288-89 (5th Cir. 1993), the Fifth Circuit reasoned that 28 U.S.C. § 1441(d) explicitly authorizes removal by a foreign sovereign, and therefore, "cannot constitute waiver." Id. at 289.

> The legislative history of the FSIA emphasizes that, in view of the potential sensitivity of actions against foreign states and the importance of developing a uniform body of law in this area, "it is important to give foreign states clear authority to remove to a federal forum actions brought against them in the state courts."

Id. (internal citation omitted). I

> If removal itself were to constitute waiver of immunity, then a foreign sovereign defendant sued in state court would have to choose between asserting removal or the immunity defense, but not both. Thus any plaintiff could force a foreign sovereign to litigate issues with broad foreign policy implications in state court. Nothing in law, logic or policy supports such a result, and the very presence of removed cases in which the sovereign immunity defense was upheld refutes the accuracy of any such claim.

Id. *See also* Stolper v. University of Sydney, 216 Fed. App'x 628, 2006 WL 3836601 (9th Cir. Dec. 29, 2006) ("A notice of removal cannot be said to constitute a responsive pleading that might waive the [defendant's] immunity under the FSIA.")

The Court finds this authority persuasive and determines that removal alone cannot act to destroy a sovereign state's immunity under the FSIA.

Good's argument that removal amounts to the assertion of a counterclaim against Good by City Hall or that City Hall "intervened" in this lawsuit meets a similar fate. Good's position that City Hall asserted a counterclaim, via removal of the case, has no basis in fact or in law, nor has Good provided any authority to support such an unlikely proposition. In addition, City Hall did not intervene in this lawsuit by properly removing it in accordance with 28 U.S.C. § 1441(d). Intervention by a party requires permission by the Court. Fed. R. Civ. P. 24. Here, Good named City Hall as a Defendant, which negated any need to intervene had City Hall wished to intervene. For these reasons, the Court concludes that the act of removal does not bar sovereign immunity under the FSIA.

### C. Tortious Activity Exception

Plaintiff also relies on the tortious activity exception to foreign sovereign immunity. 28 U.S.C. § 1605(a)(5).[3] That exception removes sovereign immunity for actions in which money damages are sought against a foreign state for personal injury. However, "the extension extends only to non-discretionary torts; it does not apply to 'any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be

---

[3] Plaintiff does not argue that City Hall is not a foreign sovereign as defined by the FSIA. Thus, City Hall has presented a *prima facie* case that it is a foreign sovereign, potentially entitled to sovereign immunity.

abused.'" Fagot Rodriguez v. Republic of Costa Rica, 297 F.3d 1, 8 (1st Cir. 2002) (*citing* 28 U.S.C. § 1605(a)(5)(A)).

Good alleges in her First Amended Complaint that Defendant Sugawara went to City Hall, and acting under orders "from Boss, and using his status as acting attorney for an ongoing Japanese suit initiated against Good, Sugawara claimed to need Good's private documents for the District Court in Hakodate." [First Amended Complaint, ¶ 17.] Good further alleges that Sugawara received from City Hall, a certified copy of Good's alien registration and signed a document saying that he would not reveal the copy to the public. [Id.] Sugawara sent Good's alien registration and family registration to another Japanese attorney, based in New York. That attorney sent the documents to the Rodey Law Firm and Rodey, acting on behalf of its client, filed a reply brief with the documents attached. This pleading was filed via the Court's electronic docket in the first federal lawsuit. The reply brief sought to address the issue of whether Good was a citizen of Japan or the United States. Good claims this filing ignored legal ethics and violated the courts' privacy policy.

When Good discovered that the documents were filed with the Court, she contacted City Hall. She contends that City Hall did not cooperate with her investigation and stalled in showing her Sugawara's petition and only then showed her a redacted form, excluding the reason Sugawara obtained Good's alien registration. Eventually, City Hall revealed Sugawara's reason for obtaining the documents, i.e., for use in the court case in Japan. Sugawara "purposefully made no mention of the suit in New Mexico," in which Sugawara was a named defendant. Good notified City Hall she would file a lawsuit against it if it did not investigate Sugawara's behavior. Essentially, Good's claim against City Hall is that it should have known that Sugawara's reasons for retrieving Good's personal

8

documents were false and that it ignored a duty to protect Good's information.  [First Amended Complaint.]

City Hall explains that Sugawara received a certified copy of Good's alien registration, a document that can be obtained by City Hall by filling out a form.  City Hall argues that, to the extent Good raises tort claims, City Hall did not engage in tortious acts.  Instead, Good's First Amended Complaint focuses on <u>Sugawara's</u> allegedly tortious actions.[4]  Moreover, even if true that City Hall "did not easily cooperate with Good", should not have given the documents to Sugawara, and should have investigated Sugawara, these are discretionary functions.  City Hall asserts that because the alleged actions or inactions are discretionary functions, the tort exception to sovereign immunity does not apply.  The Court agrees.

First, the Court is doubtful that Good has successfully alleged or produced evidence of tortious conduct on the part of City Hall.  Even assuming, for the purposes of this motion, that Good did succeed in doing so, the discretionary exception function applies.

In determining whether the acts of a foreign agency or instrumentality fit with the discretionary function exception, the United States Supreme Court set out the following two-part test:  (1) whether the challenged conduct "is a matter of choice for the acting employee" or if a federal statute, regulation or policy specifically prescribes that action the employee must follow, and (2) if the challenged conduct, which involves an element of judgment, is of the kind that the discretionary function exception was designed to shield.  Stated differently, the second question involves a determination of whether the "decisions were grounded in social, economic, and political

---

[4]To the extent that Good alleges City Hall engaged in a conspiracy with Sugawara, she simply has not alleged sufficient facts to support a *prima facie* showing of a conspiracy.

policy, concentrating on the nature of the conduct, rather than the status of the actor." Berkovitz v. United States, 486 U.S. 531, 536-37 (1988);[5] Hilsenrath v. Swiss Confederation, 2007 WL 3119833 at *5 (N.D. Cal. Oct. 23, 2007) (internal citation omitted).

The Court in Doe v. Holy See, 434 F. Supp. 2d 925 (D. Or. 2006) articulated the first part of this test as a determination whether the defendant "failed to follow a mandatory rule or policy in relation to the actions challenged in this case." Holy See, 434 F. Supp. 2d at 945-55 (*citing* Berkovitz, 486 U.S. at 536). If the agency/instrumentality failed to follow a mandatory rule or policy, then its actions were not discretionary in nature.

Here, Good did not articulate any rule or policy that City Hall violated.[6] Instead, she summarily contends City Hall engaged in tortious conduct by giving out information, that it routinely gives out, upon application. City Hall clearly had discretion to provide the requested information, to cooperate with Good, and to look into the matter if it felt an investigation was warranted. Determinations of what documents may be provided upon application involve the exercise of policy judgment. There is no evidence to show that City Hall's decisions violated social, economic or political policy. *Compare* Holy See, 434 F. Supp. 2d at 955-57 ("placement of a known child molester in a Portland parish, where he would have unlimited access to young boys for a third time, without warning the new parishioners" is not a decision based on plausible policy considerations).

---

[5]The discretionary function limitation set out in the FSIA is modeled on a similar exception to jurisdiction under the Federal Tort Claims Act, 28 U.S.C. § 2680(a). Because the latter statute has received extensive judicial treatment, Courts apply case law involving that Act's similar statutory language. Fagot Rodriguez, 297 F.3d at 9.

[6]Good might argue that she did articulate a rule in City Hall's application form, supposedly signed by Sugawara, that stated the information should not be disclosed to the public. However, even if true, this is not evidence of City Hall's violation of a mandatory rule or policy.

10

**Summary**

Thus, the Court concludes that the allegations in the complaint, even if taken as true, do not allege a tortious act or omission for purposes of FSIA jurisdiction.  And even if they did, City Hall ultimately demonstrated that none of the exceptions applied and that it was entitled to immunity under the FSIA.  Accordingly, because City Hall is entitled to immunity under the FSIA, Good's claims against City Hall must be dismissed, without prejudice.[7]

IT IS THEREFORE ORDERED that Hakodate City Hall's Motion to Dismiss is GRANTED [Doc. 9], that Plaintiff's claims against City Hall are dismissed, without prejudice, and that City Hall is dismissed from this lawsuit.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
Chief United States Magistrate Judge

---

[7] The dismissal is without prejudice since the Court determines that it does not have subject matter jurisdiction over the claims against City Hall.  Brereton v. Bountiful City Corp., 434 F.3d 1213, 1218 (10th Cir. 2006).