IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANDREA GOOD,

       Plaintiff,

v.                                                  No. CIV 08-59 LFG/LAM

BIJAN KHOSROWSHAHI,
individually and in his capacity as
President of Fuji Fire and Marine
Insurance Company Ltd.; DAVID
BUNTING, individually and in his
capacity as attorney for the Rodey Law
Firm; RODEY LAW FIRM; HAKODATE
CITY HALL; TOYOMI TAKIMOTO,
individually and in his capacity as attorney
for the Asahi Koma Law Firm; KENJI
INOUE, individually and in his capacity
as attorney for the Asahi Koma Law Firm,
ASAHI KOMA LAW FIRM; NORIO
SUGAWARA, individually and in his
capacity as attorney for Fuji Fire and Marine
Insurance Company Ltd.; HAKODATE BAR
ASSOCIATION (HAKODATE BENGOSHI
KAI),

       Defendants.

**MEMORANDUM OPINION AND ORDER**
**GRANTING DEFENDANTS' MOTIONS TO DISMISS**
**<u>FOR LACK OF PERSONAL JURISDICTION</u>**

**<u>Introduction</u>**

THIS MATTER is before the Court on five similar Motions to Dismiss filed by Defendants:

(1) Bijan Khosrowshahi ("Khosrowshahi") [Doc. 5]; (2) Norio Sugawara ("Sugawara") [Doc. 8]; (3)

1

Hakodate Bar Association [Doc. 10]; (4) Toyomi Takimoto ("Takimoto") [Doc. 20]; and (5) Kenji

Inoue ("Inoue") [Doc. 22]. Good filed three responses, some part of which addressed each of these

five motions to dismiss.[1] [Doc. Nos. 15, 16-19, 21, 24.] Replies were filed on February 21, 2008,

by Khosrowshahi [Doc. 27], and on February 25, 2008 by Sugawara and Hakodate Bar Association

[Doc. Nos. 29, 33.] No additional replies are needed before deciding these motions. After careful

consideration of the pertinent law, and the pleadings and attachments, the Court concludes that the

five motions to dismiss will be granted.

## Background

Good and her husband were involved in an automobile accident near Sapporo, Japan. Their

attempts to resolve damage claims with the allegedly culpable driver's insurance company, Fuji Fire

and Marine, proved to be disappointing for Good and her spouse. Thereafter, litigation ensued in

Japan with equally disappointing results for Good.

Good's present lawsuit ("second federal lawsuit") is related to an earlier action she brought

in the U.S. District Court ("first federal lawsuit"). In the first federal lawsuit, Good sued the allegedly

culpable driver, his insurance company and its attorneys, and various Japanese governmental agencies,

including the Ministries of Transportation, Justice and Finance, and the Japanese Association of

Assessing Insured Automobile Injuries. She sought damages allegedly suffered in the Sapporo

accident and its aftermath. [Good v. Fuji Fire and Marine, et al., No. CIV 06-962 BB/ACT.] As

would be expected, Defendants filed motions to dismiss challenging the court's jurisdiction. After

holding a hearing on July 7, 2007, the Honorable Bruce Black denied Good's motions and granted

---

[1]Good should have filed five separate pleadings for each matter upon which adjudication or a ruling of the
Court was sought. Adm. Order No. Misc. 92-88 (May 4, 1992). Notwithstanding her failure to do so, the Court
considered the responses she filed.

Defendants' motions to dismiss, either for lack of subject matter jurisdiction or lack of personal jurisdiction over the Japanese defendants.  [Doc. 64, No. CIV 06-962.]  Good's appeal from Judge Black's dismissal of her first federal lawsuit is pending before the Tenth Circuit Court of Appeals.

On November 14, 2007, Good filed what would become the second federal lawsuit.  Her complaint alleges violations of civil rights and the U.S. District Court's privacy policy and names a number of Japanese individuals and entities, along with Albuquerque attorneys, who had represented some of the defendants in the first federal lawsuit.  [Doc. 1, Ex. 1.]  The second federal lawsuit was initially filed in the First Judicial District Court in Santa Fe, New Mexico and then removed to federal court.

Good alleged that these Defendants gained access to her private documents from Japanese governmental entities and posted the documents "unredacted on the court's Pacer [system] on December 1, 2006" [in relation to the first federal lawsuit].  [Doc. 1, Ex. 1.]  Good argued that Defendants, in the first federal lawsuit, supported their motions to dismiss by retrieving Good's alien registration and her family register from Hakodate City Hall and another Japanese city hall.  Good asserted that while City Hall's order form clearly stated that the contents of the documents were not to be revealed to the public, the documents were attached to a reply brief, and thus, appeared on the Court's electronic docketing system in the first federal lawsuit, which made them accessible to the public by internet.  [*See also* Doc. 1, Ex. 2, First Amended Complaint.]

Good seeks monetary damages, including an award of compensatory damages in the amount of $500,000, and exemplary or punitive damages in an amount not less than 2 million dollars.  [Doc. 1, Ex. 2, First Amended Complaint, ¶¶ 58, 59.]

3

On January 16, 2008, Defendant City Hall, a government subdivision of a foreign sovereign entity, removed this case from the state district court in Santa Fe to the United States District Court, in accordance with 28 U.S.C. § 1441(d). [Doc. 1.] The parties consented to have the undersigned magistrate judge preside over the second federal lawsuit. [Doc. Nos. 12-14.] Similar to what occurred in the first federal lawsuit, Defendants in this case filed motions to dismiss challenging the Court's jurisdiction.

## Defendants' Motions to Dismiss

The five motions to dismiss [Doc. Nos. 5, 8, 10, 20, 22] all argue that the Court should dismiss this action against the Defendants for lack of personal jurisdiction under Federal Rule of Procedure 12(b)(2). *See* Fed. R. Civ. P. 12(b) (enumerating possible defenses that may be presented by a Rule 12(b) motion to dismiss). In their motions, Defendants state that this case is an improper extension of the first federal lawsuit, which was dismissed in its entirety, and generally assert that the claims against them should be dismissed for lack of personal jurisdiction.[2] In support of their motions, Defendants attach affidavit testimony.

Good opposes the motions to dismiss and argues, *inter alia*, that the motions should be denied for Defendants' failure to abide by a local rule that requires Defendants to contact a *pro se* party for her position before filing a motion. D.N.M. LR-Civ 7.4(a). The Court declines to deny the motions on that ground, particularly under circumstances where Good clearly opposed the motions.

Good also contends that each of the five Defendants has sufficient contacts with the forum

---

[2]Defendant Sugawara was a named defendant in the first federal lawsuit and was dismissed in that action for lack of personal jurisdiction.

State of New Mexico to support this Court's exercise of personal jurisdiction over Defendants.  In support of her position, Good attaches copies of website pages and her own affidavit testimony.

## Legal Standard

### I.      Rule 12(b)(2) Motions to Dismiss

The submission of affidavits or other materials in connection with a Rule 12(b)(2) motion does not automatically convert it into one for summary judgment. Sunwest Silver, Inc. v. Int'l Connection Inc., 4 F. Supp. 2d 1284, 1285 (D.N.M. 1998).  A plaintiff opposing a motion to dismiss for lack of personal jurisdiction bears the burden of establishing that the exercise of jurisdiction over the defendant[s] is proper.  Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd., 385 F.3d 1291, 1295 (10th Cir. 2004); Kuenzle v. HTM Sport-Und Freizeitgerate AG, 102 F.3d 453, 456 (10th Cir. 1996). If the Rule 12(b)(2) motion is submitted on the basis of affidavits and other written materials, and decided without an evidentiary hearing, the plaintiff need only make a *prima facie* showing to avoid dismissal for lack of jurisdiction.  AST Sports Science, Inc. v. CLF Distribution Ltd., ___ F.3d ___, 2008 WL 217722 at *2 (10th Cir. Jan. 28, 2008); OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1091 (10th Cir. 1998).  On such a pre-trial motion to dismiss, all factual disputes are resolved in favor of the plaintiff.  Kuenzle, 102 F.3d at 456.

### II.     Personal Jurisdiction

This is a federal question case based on Good's claims that her civil rights were violated.  The Civil Rights Act does not authorize nationwide service of process.  Catrone v. Ogden Suffolk Downs, Inc., 647 F. Supp. 850, 856 (D. Mass. 1986) .  Where the federal statutes governing the claims in a federal question case do not specifically provide for national service of process, the Court applies the law of the forum state – New Mexico.  Sunwest Silver, 4 F. Supp. 2d at 1286.  The operative

question under New Mexico law is whether a defendant's contacts with the forum state are sufficient to satisfy due process requirements of the federal constitution.[3]  *See id.  See also* <u>Visarraga v. Gates Rubber Co.</u>, 104 N.M. 143, 146, 717 P.2d 596, 599 (Ct. App.), *cert. quashed*, 104 N.M. 137 (1986). ("[i]n order to satisfy . . . constitutional requirements, the minimum contacts with New Mexico must be sufficient so as not to violate basic principles of due process.")

Stated differently, "[u]ltimately, amenability to extra-territorial personal jurisdiction is a question of due process." <u>Honeywell, Inc. v. Metz Apparatewerke</u>, 509 F. 2d 1137, 1143 (7th Cir. 1975). "If the defendant has "minimum contacts" with the forum state such that "he should reasonably anticipate being haled into court there," <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980), the Court next considers whether the exercise of personal jurisdiction over the defendant[s] offends "traditional notions of fair play and substantial justice." <u>AST Sports Science</u>, __ F.3d ___, 2008 WL 217722 at *2 (internal citations omitted). *See* <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945); <u>Trierweiler v. Croxton & Trench Holding Corp.</u>, 90 F.3d 1523, 1532-33 (10th Cir. 1996).

> Purposeful establishment of minimum contacts assures a reasonable expectation in the out-of-state [country] defendant that he might be brought into court in the state where he sought to do business, and invokes the benefits and protections of the forum state's laws . . . . In turn, the purposeful availment requirement also ensures that a defendant will not be subject to the laws of a jurisdiction "solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person."

---

[3]New Mexico cases confirm that for purposes of determining a court's exercise of personal jurisdiction, there is no need to examine the acts of defendants and determine if those acts fall within the definition of the state's long-arm statute.  Instead, the key inquiry is whether the defendants had the requisite minimum contacts with New Mexico to satisfy due process.  <u>Zavala v. El Paso Hospital District</u>, 143 N.M. 36, 172 P.3d 173, 178-79 (Ct. App. 2007).  New Mexico law merges the analysis of whether a defendant has committed a tortious act within New Mexico with the inquiry regarding whether such activities constitute minimum contacts sufficient to satisfy due process concerns.  <u>Smith v. Cutler</u>, 504 F. Supp. 2d 1162, 1166 (D.N.M. 2007).

AST Sports Science, __ F.3d __, 2008 WL 217722 at *3 (internal citations omitted).  The Due Process Clause protects an individual (or entity) from being subjected to the judgment of a forum with which "he [or it] has established no meaningful 'contacts, ties, or relations.'"  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72 (1985).

The minimum contacts test may be met in either of two ways:  general jurisdiction or specific personal jurisdiction.  New Mexico has general jurisdiction if a defendant has "continuous and systematic contacts with [New Mexico] such that the defendant could reasonably foresee being haled into court in that state for any matter" and the plaintiff need not demonstrate a connection between the defendant's contacts and the cause of action.  Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 415-16 (1984);  Zavala, 172 P.3d at 179.

To determine the existence of general jurisdiction, the Court considers such factors as whether a company solicits business in the state through a local office or agents; whether the company sends agents into the state on a regular basis to solicit business; the extent to which the corporation holds itself out as doing business in the forum state, through advertisements, listings, or bank accounts, and the volume of business conducted in the state by the company.  Capitol Fed. Savings Bank v. Eastern Bank Corp., 493 F. Supp. 2d 1150, 1164-65 (D. Kan. 2007).

The Court may exercise specific personal jurisdiction over these defendants "if the defendant has 'purposefully directed' his [or its] activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities."  Burger King, 471 U.S. at 472; see also Melea, Ltd. v. Jawer SA, 511 F.3d 1060, 1065-66 (10th Cir. 2007) (diversity case arising out of Colorado).  Specific personal jurisdiction may be established in a number of ways including consideration of advertisements in the state, websites and the number of New Mexico customers,

provided that to exercise such jurisdiction would not offend traditional notions of fair play and substantial justice.   The Court also looks at "prior negotiations and contemplated future consequences" between the parties.  AST Sports Science, __ F.3d __, 2008 WL 217722 at *3.

In making the determination of reasonableness, the Court balances five factors:  the burden on the defendant; New Mexico's interest in resolving the lawsuit; the plaintiff's interest in receiving convenient and effective relief; the judicial system's interest in obtaining the most efficient resolution of the controversy; and the interest in promoting public policy.  AST Sports Science, __ F.3d __, 2008 WL 217722 at *5 (internal citation omitted).  .

A.   **_Bijan Khosrowshahi_**

i.   **_General Jurisdiction_**

The Court concludes that Good has not provided sufficient evidence for the Court to exercise general jurisdiction over Khosrowshahi.  Indeed, Khosrowshahi testifies in his affidavit that he is a Director, President and CEO of The Fuji Fire and Marine Insurance Company, Limited, whose headquarters is in Osaka, Japan, he lives and works in Japan, and he does not maintain any residence or office in New Mexico.  Moreover, Fuji Fire does not have an office in New Mexico, nor does he have any employees here.  Khosrowshahi does not own investments, securities or other assets in New Mexico; does not hold bank accounts here; is not a party to a contract with any resident of New Mexico; does not pay income taxes in this state and has not authorized anyone in the United States to accept service on his behalf.  [Doc. 5, Affidavit.]  Thus, there is no evidence that Khosrowshahi solicits business through New Mexico or houses a local office or agents in New Mexico. Khosrowshahi does not hold himself out as doing business in this state through advertisements,

listings or bank accounts.  Good did not come forward with any evidence of a "deliberate presence" by Khosrowshahi in New Mexico.

### ii. Specific Personal Jurisdiction

As stated *supra* at fn. 4, the Court need not determine whether there is sufficient evidence to show Khosrowshahi may have committed a tortious act or engaged in a conspiracy in New Mexico. Zavala, 172 P.3d 178-79.  Instead, Good must demonstrate that Khosrowshahi "purposely directed his activities" towards residents of New Mexico or [that] his contacts with New Mexico are sufficient so as not to offend "traditional notions of fair plan and substantial justice."

Here, Good fails to satisfy her burden of making a *prima facie* showing of personal jurisdiction over Khosrowshahi.  None of Good's mostly unsupported allegations demonstrate that Khosrowshahi "intentionally, purposefully, and persistently solicit[ed] the business" of New Mexico residents.  *See* Zavala, 172 P.3d at 180 (discussing minimum contacts).

Good alleges that Khosrowshahi ordered Japanese attorneys to go to Hakodate City Hall in Japan to obtain Good's alien registration and family registration and send the documents to the Rodey Law Firm in Albuquerque as part of the defense of the first federal lawsuit.  Such actions, even if true, do not demonstrate that Khosrowshahi "purposefully availed" himself of the benefits of conducting business in New Mexico.

Good further asserts that Khosrowshahi is the CEO who was ultimately responsible for all actions taken by Fuji Fire and Marine Insurance Company.  Through his agents, the Rodey Law Firm, to whom he paid the expenses for the first federal lawsuit "which lasted almost a year, he has established not only sufficient but continued contact with the forum as to support personal jurisdiction . . . ."  [Doc. 15, p. 2.]

9

Khosrowshahi's responsibility for a Japanese insurance company does not mean Khosrowshahi initiated meaningful contacts or connections with New Mexico. *See, e.g.,* Melea, 511 F.3d at 1067 (*citing* Hanson v. Denckla, 357 U.S. 235, 253 (1958)) (only the defendant's own actions, directed at the forum State, are relevant to the jurisdictional question). There is no evidence that Khosrowshahi solicited business in or with New Mexico. Nor does his alleged payment for the defense of a lawsuit brought against him in New Mexico by Good demonstrate sufficient connections with the forum state. He has not purposefully availed himself of benefits in New Mexico. By virtue of Good's first federal lawsuit, he simply was required to provide a defense for his company in a New Mexico lawsuit. Thus, it was Good's conduct in New Mexico that prompted Khosrowshahi to retain counsel. *See* AST Sports Science, 2008 WL 217722 at *3 (Court does not look a the unilateral activity of another to determine if the defendant "purposely availed" himself).

Good discusses Fuji Fire Insurance's commercial websites that allegedly do a substantial volume of business over the Internet and feature Khosrowshahi's name and photo on the front page. Good states that the website provides stock purchasing information highlighted in yellow, "through which customers in any location can immediately engage in business with the website owner." [Doc. 15, pp. 2-3.] Good argues that "surely Khosrowshahi as the respected CEO" and "an extremely busy professional overseeing one of Japan's largest insurance companies" "cannot claim that not one New Mexico resident holds shares in his company." She further contends that solicitation of business, commissioned salespeople and continuous business provide "specific if not personal jurisdiction."

First, Fuji Fire's website should not be equated with Mr. Khosrowshahi, its President and CEO, who is pictured and described on the website. *See* Denckla, 357 U.S. at 253. Even if Fuji

10

Fire's website could confer personal jurisdiction over Khosrowshahi, this type of website typically does not favor a finding of personal jurisdiction.

The seminal authority for determining whether Internet contacts may establish personal jurisdiction is Zippo Mfr'g Co. v. Zippo Dot com, Inc., 952 F. Supp. 1119 (W.D. Pa. 1997). *See also* Soma Med. Int'l v. Standard Chartered Bank, 196 F.3d 1292, 1296-97 (10th Cir. 1999) (applying standards set out in Zippo).  In Zippo, the defendant, like Khosrowshahi, had no offices, employees or agents in the forum.  However, the defendant in Zippo advertised in the forum through its website. The Court in Zippo determined that a "sliding scale" analysis was appropriate in examining possible Internet-based personal jurisdiction.  Zippo, 952 F. Supp. at 1124.

At one end of the spectrum were situations where a defendant clearly conducted business over the Internet by entering into contracts with residents of a foreign jurisdiction that involved the knowing and repeated transmission of computer files over the Internet.  Under those circumstances, personal jurisdiction was proper.  At the other end of the scale were situations where a defendant simply posted information on an Internet website that was accessible to users in foreign jurisdictions. A passive website, of that nature, does little more than make information available to interested parties but it is not grounds for the exercise of personal jurisdiction.  There was also a middle ground in the sliding scale, where interactive websites existed enabling a user to exchange information with a host computer.  With respect to the middle ground, the Court examined the level of interactivity and commercial nature of the exchange of information that occurred via the website.  Id.

In examining the website and materials provided by Good, the Fuji Fire website is a passive website that conveys information to interested viewers.  There is no evidence to demonstrate that viewers can enter into contracts with Fuji Fire via that website or that they can even exchange

11

information with the host computer.  Moreover, Fuji Fire's website, even if an interactive website, would not confer personal jurisdiction over Khosrowshahi, who is merely pictured and identified on the site.

In addition, Good's speculation that at least one New Mexico resident must hold stock shares in such a large Japanese company is not sufficient to confer jurisdiction over Khosrowshahi.  First, it is nothing more than speculation on Good's part.  Second, the fact that New Mexico residents may hold shares of stock in a company does not amount to purposeful actions taken by Khosrowshahi that might subject him to personal jurisdiction in New Mexico.  Indeed, a New Mexican who may have purchased Fuji stock through a New York broker would hardly subject Fuji to New Mexico's jurisdiction.  Further, Good's generalized contention that solicitation of business, commissioned sales people and continuous business amount to personal jurisdiction over Khosrowshahi is unsupported.  This is particularly true in view of Khosrowshahi's uncontested affidavit testimony to the contrary.  [Doc. 5, Ex. A.]

Good also claims Khosrowshahi accepted service through his office in California.  Even if true, which Khosrowshahi disputes, this would not subject Khosrowshahi to personal jurisdiction in New Mexico.  Acceptance of service in California does not provide any link or connection to New Mexico.

Based on these meager to non-existent contacts with New Mexico, the Court concludes that an exercise of personal jurisdiction over Khosrowshahi would offend "traditional notions of fair play and substantial justice."  Khosrowshahi could not possibly "anticipate being haled into court here" based on the alleged contacts he has with the forum.  *See* <u>Trierweiler</u>, 90 F.3d at 1534.

Khosrowshahi has not invoked, by act or conduct, the benefits and protection of the laws of New Mexico. *See* International Shoe, 326 U.S. at 319.

The burden on Khosrowshahi, who lives and works in Japan, to defend an action in New Mexico would be substantial. The burden on a defendant litigating a case in a foreign forum is of primary concern in determining the reasonableness of personal jurisdiction. AST Sports Science, __ F.3d __, 2008 WL 217722 at *6. "When the defendant is from another country, this concern is heightened and great care and reserve should be exercised before personal jurisdiction is exercised over the defendant." Id. (internal citation omitted).

Moreover, most of the actions in dispute occurred in Japan, from the automobile accident to the alleged taking of documents from Japanese City Halls and mailing them to attorneys in New York and then to attorneys in New Mexico. A majority of the witnesses have no connection to New Mexico. They either live outside New Mexico or in Japan. Under these circumstances, New Mexico has little interest in adjudicating this case. While Good's interests in litigating the case in New Mexico may be significant, they are outweighed by the burden on Khosrowshahi and the interests in efficiency. There simply is no showing that New Mexico has an interest in adjudicating this matter or that it would be efficient to resolve this matter in New Mexico.

In addition, the "fifth factor of the reasonableness inquiry 'focuses on whether the exercise of personal jurisdiction by the forum affects the substantive social policy interests of other states or foreign nations.'" AST Sports Science, __ F.3d __, 2008 WL 217722 at *7. "[G]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." Id. (internal citations omitted). The Court will exercise great care and reserve under the circumstances of this case because the issues raised by Plaintiff appear to concern social policy

interests in Japan, and how documents are obtained and released in that country.  The issues have little, if anything, to do with the social concerns of this country or New Mexico.

For all of these reasons, Khosrowshahi's motion to dismiss for lack of personal jurisdiction is granted.

**B.**      **_Norio Sugawara_**

    **i.**      **_General Jurisdiction_**

Sugawara is an attorney who lives and works in Japan.  He represents Fuji's interests in Japan. He is not licensed nor does he practice law in New Mexico or in any other place in the United States. He has never been to New Mexico and has no contacts with New Mexico.  He holds no license to do any kind of business in New Mexico.  He does not own any investments, securities, real property or personal property in New Mexico.  [Doc. 8, Ex. A.]  Sugawara was also named as an individual Defendant in Good's first federal lawsuit.  In that case, the U.S. District Court granted his motion to dismiss based on lack of personal jurisdiction.  [No. CIV 06-962 BB/ACT; _see also_ Doc. 8, Ex. B.][4]

The Court concludes that Good has not provided sufficient evidence for the Court to exercise general jurisdiction over Sugawara.  Similar to its findings _supra_, there is no evidence that Sugawara solicits business through New Mexico or houses a local office or agents in New Mexico.  Sugawara does not hold himself out as doing business in this state through advertisements, listings or bank accounts.  Good did not come forward with any evidence of a "deliberate presence" by Sugawara in New Mexico.

---

[4]In light of Judge Black's ruling that this Court lacked personal jurisdiction over Sugawara, Good risked Fed. R. Civ. P. 11 sanctions by again attempting to sue him in a New Mexico court.

ii.      *Specific Personal Jurisdiction*

The Court need not determine whether there is sufficient evidence to show Sugawara may have committed a tortious act or engaged in a conspiracy in New Mexico. Zavala, 172 P.3d 178-79. Instead, Good must demonstrate that Sugawara "purposely directed his activities" towards residents of New Mexico or that his contacts with New Mexico are sufficient so as not to offend "traditional notions of fair plan and substantial justice."

Good claims that Sugawara went to Hakodate City Hall in Japan, acting under orders by Khosrowshahi, and obtained Good's alien registration which he then sent to a Japanese attorney in New York, who in turn sent the document to the Rodey Law Firm who was defending Fuji in the first federal lawsuit.  Good claims, without substantiation, that Sugawara was an attorney for City Hall and Fuji Fire.  He was a "veteran member and past director of the Hakodate Bar Association." Sugawara supposedly hired Rodey Law Firm to be his attorney in the first federal lawsuit.  [Doc. 21, p. 8.]  Good alleges that Sugawara was not entitled to obtain her private documents and ultimately have them sent to the United States.  She contends that Sugawara "manhandled" the documents and that he "knowingly covered [his] tracks" in hiding the reasons he sought to obtain the documents. Good summarily asserts that Sugawara had contact with the forum through his agents.  [Doc. 21.]

There is no evidence that Sugawara "purposefully availed" himself of the benefits or the laws of New Mexico.  Indeed, there is no evidence connecting Sugawara to New Mexico, with the exception that Good named him as a defendant in the first federal lawsuit filed in New Mexico. Moreover, Sugawara was dismissed from that lawsuit on grounds that the Court lacked personal jurisdiction over him, notwithstanding the same allegations that Good's private information was attached to pleadings filed in that case as a result of Sugawara's actions.  In addition, while Good

alleges that Sugawara sent the private information from Japan to the United States, the information first went to an attorney in New York, who then sent the information to an attorney in New Mexico.

For reasons similar to those discussed *supra* at pp. 12-13, the Court concludes that it would offend "traditional notions of fair play and substantial justice" to subject Sugawara to this Court's jurisdiction. Like Khosrowshahi, there is no evidence to demonstrate that Sugawara could anticipate being haled into Court here, other than Good's previous failed attempt to do so in the first federal lawsuit. For all of the reasons stated above, the Court grants Sugawara's motion to dismiss for lack of personal jurisdiction.

### C.  *Hakodate Bar Association*

There is no need to examine the questions of general and personal jurisdiction separately with respect to Hakodate Bar Association. Good presents no evidence that the Japanese bar association has "continuous and systematic" contacts with New Mexico for purposes of general jurisdiction. Nor does she produce evidence of personal jurisdiction, i.e., that the bar association "purposefully availed itself of the privilege of conducting activities" in New Mexico, thus invoking the benefits and protections of New Mexico law. *See* Denckla, 357 U.S. at 253.

Good's allegations against Hakodate Bar Association are sparse. In the First Amended Complaint, she alleges that the bar association had a legal duty to investigate Sugawara's conduct in Japan, and that she warned the bar association she would file a lawsuit against them unless they conducted an investigation. [Doc. 1, attachment, ¶ 26.] She also asserted that the bar association somehow knew that Sugawara's reasons for retrieving Good's documents from City Hall were false and that the bar association had a duty to protect Good's alien registration from being misused.

In her response to the motion to dismiss [Doc. 21], Good argues that the bar association "knowingly stood by" but refused to take "sufficient action" against Sugawara, who allegedly is a past director of the bar association.  She claims that the bar association's "agent", Sugawara, had contact with New Mexico through his agents.

The Court already determined that Sugawara had insufficient contacts with the forum to subject him to the Court's jurisdiction.  Thus, his supposed contacts with New Mexico, or lack thereof, cannot support jurisdiction over the bar association.

Moreover, Good has failed to come forward with evidence of actions or contacts by the bar association that would link it to New Mexico.  In other words, it is undisputed that the bar association is located in Japan, does not have an office or own any real or personal property in New Mexico, does not have any bank accounts with New Mexico and is not a party to any contracts with any residents of New Mexico.  [Doc. 10, Ex. A.]  Any alleged action or inaction by the Bar Association occurred, or did not occur, in Japan.

Good's mere allegations of tortious conduct or conspiracy by the bar association, while weak at best, if not frivolous, do not serve to confer personal jurisdiction over the bar association.  *See* Zavala, 172 P.3d 178-79.  Good's assertion that she threatened the bar association with legal action is not evidence of purposeful availment on the part of the bar association.  It shows intentional conduct by Good, but that does not assist her in providing evidence of minimum contacts between the bar association and the forum.  These types of attenuated contacts, or the unilateral activity of Good do not demonstrate the type of minimum contacts that would ensure a reasonable expectation in the bar association (or any of these defendants) that they might be brought into court in New Mexico.  *See* AST Sports Science, 2008 WL 217722 at *3.

17

Even if true that the bar association "stood by" and failed to investigate Sugawara's conduct in obtaining Good's personal information from an agency in Japan and Sugawara's supposed communication of that information to an attorney in New York, the bar association's inaction in Japan does not establish minimum contacts with New Mexico.

For all of these reasons and those stated *supra*, jurisdiction over the Hakodate Bar Association would be improper because it would offend traditional notions of fair play and substantial justice. Therefore, the Court grants Hakodate Bar Association's motion to dismiss for lack of personal jurisdiction.

D.     **Toyomi Takimoto and Asahi Koma Law Firm**

Takimoto asks that the Court dismiss all of the claims against him for lack of personal jurisdiction and also against the former Asahi Koma Law Firm because it no longer exists, and also because the Court would not have jurisdiction over the law firm.

*i.     General Jurisdiction*

Takimoto is an attorney who lives and works in Japan. He is not licensed to practice law in New Mexico or in the United States. He has never been to New Mexico and has no contacts with New Mexico. He holds no license to do any kind of business in New Mexico. He does not own any investments, securities, real property or personal property in New Mexico. [Doc. 20, Ex. A.] While he previously was employed by Asahi Koma Law Firm, that law firm no longer exists. Takimoto does not believe that the Asahi Koma Law Firm ever owned any property, real or personal, in New Mexico. [Id.]

The Court concludes that Good did not provide sufficient evidence for the Court to exercise general jurisdiction over Takimoto or the Asahi Koma Law Firm. Similar to its findings *supra*, there

is no evidence that Takimoto (or the prior law firm) solicits business through New Mexico or houses

a local office or agents in New Mexico.  Neither Takimoto nor the prior law firm held themselves

out as doing business in this state through advertisements, listings or bank accounts.  Good did not

come forward with any evidence of a "deliberate presence" by Takimoto or the prior law firm in New

Mexico.

      *ii.*     ***Specific Personal Jurisdiction***

The Court need not determine whether there is sufficient evidence to show Takimoto may

have committed a tortious act or engaged in a conspiracy in New Mexico.  Zavala, 172 P.3d 178-79.

Instead, Good must demonstrate that Takimoto "purposely directed his activities" towards residents

of New Mexico or that his contacts with New Mexico are sufficient so as not to offend "traditional

notions of fair plan and substantial justice."

The First Amended Complaint alleges that Takimoto is a Japanese attorney working for the

Asahi Law Firm in Tokyo and that Asahi Koma Law Firm is a law firm based both in Tokyo and New

York.  [Doc. 1, attachment, ¶¶ 8, 10.]  Good alleges that Takimoto, as instructed by Khosrowshahi,

used his status as attorney to obtain a copy of Good's family registration from Nara City Hall (not

a defendant in this case).  The city hall's form allegedly required Takimoto not to reveal the contents

of the document to the public.  According to Good, Sugawara and Takimoto sent Good's personal

information to Attorney Inoue, who is based in New York.

In her opposition brief, Good states that while the Asahi Koma Law Firm no longer exists,

Takimoto and Inoue continue to work for a law firm under a "new name" – Nishimura and Asahi.

According to Good, Takimoto, Inouye and the law firm paid the expenses of defending the first

federal lawsuit in New Mexico.  Thus, Good argues that this establishes sufficient contacts with New Mexico for the Court to exercise personal jurisdiction over Takimoto and the law firm.

Good also supplies copies of commercial website pages featuring Takimoto.  Good asserts that these websites amount to "solicitation of business, and continuous business" in support of personal jurisdiction.  Her attachments, for example, include a press release regarding Nishimura & Partners and Kokusai Bumon of Asahi Law Offices Integration (in July 2007) To Be the Largest Law Firm in Japan.  [Doc. 24, Ex. A.]  Good also attached an attorney profile for associate attorney Inoue [Ex. B] and Counsel Takimoto [Ex. C.]  Takimoto's profile indicates a telephone number in Japan, that Takimoto was admitted to the Bar in Japan in 2000, that he attended the University of Tokyo, and was also a visiting fellow at Stanford University in 1998.  Nothing in the copies of these website pages indicates that the website is interactive in any way, or that a party could contract with an attorney through the website.

Finally, Good again argues that her threat to bring a lawsuit against Takimoto and the law firm amounts to "fair warning" that they could be brought into court.  Thus, according to Good, Takimoto and the law firm submitted themselves to the jurisdiction of the Court.

There is no evidence that Takimoto or the law firm "purposefully availed" themselves of the benefits or the laws of New Mexico.  Indeed, there is no evidence connecting either of them to New Mexico, with the exception that Good named these parties as Defendants in this lawsuit.  In addition, while Good alleges that Takimoto sent the private information from Japan to the United States, it is undisputed that the information was sent to an attorney in New York rather than to an attorney in New Mexico.

Good's argument about the website supporting jurisdiction fails for the same reasons articulated *supra*.  The website, based on the submissions of Good, is nothing more than a passive website that provides information to viewers about a Japanese law firm.  It does not link Takimoto or the previous law firm, to New Mexico.  *See* <u>Zippo</u>, 952 F. Supp. at 1124.

The Court again rejects Good's argument that her threat of a lawsuit is sufficient warning for Takimoto and the former law firm to anticipate being haled into Court.  If the mere threat of a lawsuit could confer jurisdiction over a party in another state or country, the analyses concerning minimum contacts and reasonableness would be meaningless.

For reasons similar to those discussed *supra* at pp. 12-13, the Court concludes that it would offend "traditional notions of fair play and substantial justice" to subject either Takimoto or the previous law firm, Asahi Koma Law Firm, to this Court's jurisdiction.  Like Khosrowshahi and Sugawara, there is no evidence to demonstrate that Takimoto or the previous law firm could anticipate being haled into Court here.  Thus, the Court grants Takimoto's motion to dismiss for lack of personal jurisdiction, thereby dismissing both Takimoto and the Asahi Koma Law Firm.

### E.   <u>Kenji Inoue</u>

#### i.   *General Jurisdiction*

Inoue is Fuji's attorney who lives and works in New York.  He is licensed to practice in Japan and New York, but is not licensed to practice law in New Mexico.  Inoue's only contact with New Mexico resulted from the two lawsuits brought by Good.  He holds no licenses to do any kind of business in New Mexico.  He does not own any investments, securities, real property or personal property in New Mexico.  [Doc. 22, Ex. A.]  While he previously was employed by Asahi Koma Law Firm, he left that firm, and it has since disbanded.

21

The Court concludes that Good has not provided sufficient evidence for the Court to exercise general jurisdiction over Inoue.  Similar to its findings *supra*, there is no evidence that Inoue solicits business through New Mexico or houses a local office or agents in New Mexico.  Good did not come forward with any evidence of a "deliberate presence" by Inoue in New Mexico.

### ii.       Specific Personal Jurisdiction

The Court need not determine whether there is sufficient evidence to show Inoue may have committed a tortious act or engaged in a conspiracy in New Mexico.  Zavala, 172 P.3d 178-79. Instead, Good must demonstrate that Inoue "purposely directed his activities" towards residents of New Mexico or that his contacts with New Mexico are sufficient so as not to offend "traditional notions of fair plan and substantial justice."

Good's primary allegation concerning Inoue is that Sugawara and Takimoto sent Good's alien registration and family registration to Inoue, who was with the Asahi Koma Law Firm in New York at that time.  Inoue purportedly sent the documents to Rodey Law Firm in Albuquerque for purposes of defending the first federal lawsuit.  Subsequently, the documents were attached to a reply brief by Defendants, which was filed on the Court's electronic docket.  Good makes no other specific allegations about Inoue in the First Amended Complaint, other than summary legal conclusions, e.g., Inoue and others allegedly conspired to violate Good's civil rights to due process.  [Doc. 1, attachment, ¶ 49.]

Good raises the same arguments about Inoue as she did Takimoto.  [Doc. 24.]  For example, she claims that Inoue hired Rodey attorneys to defend the first federal lawsuit and that he, along with others, paid the expenses of that lawsuit for a significant period.  Inoue, like Takimoto, is featured on the new firm's website.  Good also asserts that Inoue, while not licensed to practice law in New

Mexico, "has been the main attorney for this and the previous lawsuit.  He has seen to the hiring of the attorneys in New Mexico, and despite being the last to receive service via the Hague, was actually among the first to receive service in New York."  [Doc. 24, p. 3.]  In addition, Good contends that Inoue was warned of her potential lawsuit and thus had adequate notice that he might be haled into court here.

In essence, Good has pointed to only two contacts by Inoue with New Mexico, to the extent these incidents could be considered "contacts" for the purpose of the minimum contacts and due process analyses.  Inoue supposedly mailed Good's personal information to attorneys in New Mexico for purposes of defending the first federal lawsuit, and Inoue was warned that Good might file a lawsuit naming Inoue as a defendant.

Even considering these allegations as true, they are do not amount to the requisite minimum contacts with New Mexico sufficient to demonstrate that maintenance of the lawsuit does not offend traditional notions of fair play and substantial justice.

This case is distinguishable from that of AST Sports Science, Inc., where the Tenth Circuit reversed the district Court's dismissal for lack of jurisdiction.  __ F.3d __, 2008 WL 217722.  In that case, the Court concluded that the defendants purposefully directed their activities into the forum state.  For example, the plaintiff and defendant in that case both resided in Colorado at one point.  The two parties conferred about entering into a business relationship together.  Defendant moved to England, in part to commence the business discussed by Plaintiff.  Plaintiff assisted Defendant in the move to England.  Defendant returned to Colorado every few months for awhile.  He and Plaintiff would meet and discuss business.  The two entered into an exclusive right to distribute agreement.  Orders from Plaintiff were placed by Defendant telephonically, as well as by email and facsimile.  The

orders were then shipped by Plaintiff directly to Defendant.  Payment was made by Defendant to Plaintiff via check or wire transfer.  Id. at *2-3.

It is no surprise under the facts of that case that the Court found both the existence of sufficient minimum contacts between the parties and also that an exercise of personal jurisdiction would not offend "traditional notions of fair play and substantial justice."  Id. at *6-8.

The facts in this case do not come close to establishing minimum contacts and utterly fail to satisfy due process concerns.

IT IS THEREFORE ORDERED that:

(1)  Bijan Khosrowshahi's Motion to Dismiss is GRANTED [Doc. 5]; (2) Norio Sugawara's Motion to Dismiss is GRANTED [Doc. 8]; (3) Hakodate Bar Association's Motion to Dismiss is GRANTED [Doc. 10]; (4) Toyomi Takimoto's Motion to Dismiss is GRANTED [Doc. 20]; and (5) Kenji Inoue's Motion to Dismiss is GRANTED [Doc. 22].

The result is that Plaintiff's claims against these five Defendants and the Asahi Koma Law Firm are dismissed, with prejudice.

_Lorenzo F. Garcia_
Lorenzo F. Garcia
Chief United States Magistrate Judge